Loud *v.* Pierce.

---

## WARREN LOUD *versus* HIRAM PIERCE.

The Bankrupt Act of the United States of 1841, was constitutional, and equally affected debts contracted before its passage, as well as those of a subsequent date; and as well in case of voluntary, as involuntary bankruptcy.

In an action upon a promissory note, where the bankruptcy of the maker is alleged in his defence, and the certificate of discharge is attempted to be impeached on the ground of a prior fraudulent sale of goods to a third person, which he did not include in his schedule of effects, the purchaser is a competent witness.

An omission by the bankrupt to insert some articles of property in his schedule of effects by accident or mistake, is not evidence of "fraud, or wilful concealment of his property," within the meaning of the Bankrupt Act.

It is only to errors in matters of law that exceptions, under Rev. Stat. c. 96, can be taken, at the trial of an action. Suggestions made by the presiding Judge to the jury as to the inconclusiveness of the evidence on a particular point, form no ground of exception.

THIS case came before the Court on exceptions on the part of the plaintiff, and on a motion for a new trial because the

verdict was against evidence. The motion was not filed until the third day after the verdict was returned, and there was no report of the evidence, other than what appears in the bill of exceptions.

The exceptions, saving the formal part in conclusion, were as follows : —

This was an action on a note of hand, and the defence was a voluntary bankrupt certificate, which the plaintiff undertook to impeach for fraud and wilful concealment of property and rights of property. The defendant's first petition in bankruptcy was dated May 16, 1844.

The plaintiff proved, that there was a great variety of personal property in the possession of the defendant at the time of his bankruptcy, not contained in the schedule rendered by him. The defendant then offered Oliver Prescott, who testified, that he and one Whitehouse were joint mortgagees of all the defendant's personal property, and that some years ago they had a mortgage of his real estate, and finally took an absolute deed, and that they held all this property to secure their debts and liabilities. The plaintiff objected to this witness as interested ; but he was admitted by WHITMAN C. J. who presided at the trial. The witness then testified to the above conveyances, and also that when they took a mortgage of personal property in 1839, there was a verbal agreement, that all the farming tools and stock of every name and description, not included in the writing, should be theirs, that all increase of stock, and all other stock and farming tools subsequently purchased by said defendant should be theirs, but that at the time of the defendant's bankruptcy, they had not taken actual possession of said property. The plaintiff then proved, that the defendant had at the time of his bankruptcy a considerable amount of personal property raised and purchased since 1839, and contended that this property did not pass by the agreement to the said Prescott & Whitehouse, but was the property of the defendant at the time of his bankruptcy. The said Prescott further testified, that the reason why all this property was not included in the written mortgage

in 1839, was, that he and Whitehouse did not suppose that any deputy sheriff would attach such small things, and that there was an understanding between them and the defendant, that they would reconvey to him whenever he would discharge them from their liabilities, or pay to him any surplus which might remain upon a sale of the property over and above what might be sufficient to indemnify them, but they could not sell the property for enough to indemnify them. The plaintiff contended that the transactions, at least as to all the property not included in the writings, was fraudulent, and that there was a secret trust to reconvey, which was a right of property still subsisting in the defendant at the time of his bankruptcy, and which he was bound to surrender up.

The Court instructed the jury, that from the testimony of Prescott, they would consider whether it was not reasonable for them to believe, that in the schedule of property furnished by the defendant, he innocently omitted to insert the above articles by reason of his belief that they were absolutely the property of said Prescott & Whitehouse, and if they should so believe, the position assumed as to those items was not sustained. The plaintiff introduced a witness who testified, that in March or April, 1842, the defendant had from five to ten cords of wood hauled out in the road near the witness' house in Augusta, about ten cords in the witness' field, and ten or fifteen cords more in the woods on the Kelsea place in Augusta, from which the residue of the wood had been hauled, and that the defendant hauled this wood to market in June and July of the same year.

The plaintiff contended, that this was a wilful concealment of property, and that there was no defence to it. The Court instructed the jury, that perhaps this testimony was susceptible of explanation, it appearing that the wood was got from the land of another person, it might be, that it was not to be his property till stumpage was paid, or that it was hauled to market upon shares, so that he could not consider himself the owner of it; that to make him guilty of fraud, it should appear, that it was actually his, so that his assignee could be

entitled to it, and that the defendant so understood it. The plaintiff also contended that the word fraud in the brankrupt law did not imply any intention to cheat, or any moral turpitude, but that any act which would prevent an equal distribution of the bankrupt's property, and would contravene the general principles of the law, was within the meaning of the statute. The Court instructed the jury, that the word fraud included a wilful concealment of property, and the wilful concealment of property was a fraud, so that this meant the same ; and that unless they were satisfied that there had been a wilful concealment of property by the defendant, they should bring in their verdict for the defendant. The verdict was for the defendant.

To all which rulings, instructions and decisions the plaintiff excepted.

*J. Baker*, for the plaintiff, among others, made these points.

1. The voluntary certificate of bankruptcy, in this case, is void as a bar to this action. It must have a retrospective operation to furnish a defence. No such operation is given to the law by its terms, and the construction of it must come under the general and well established rule, that all statutes are prospective, unless it be expressly stated in the law to be otherwise. 2 Maine R. 275, *Ken. Pur.* v. *Laboree*; 2 Gall. 105 ; 3 Dal. 386; 6 Cranch, 87; 16 Mass. R. 215 & 245; 15 Maine R. 134; 13 Mass. R. 116 and 464; 6 Pick. 440; 12 Pick. 572; 5 Hill, 327. The certificate is no bar, also, because this is a case of voluntary bankruptcy, and the law, if retrospective, is unconstitutional. *Sackett* v. *Andross, 5 Hill,* 327.

This point may be properly taken, although not raised at the trial. A point not raised at the trial, if presented on the report, and not susceptible of further proof, may be raised in the argument. 5 Pick. 240; 1 Metc. 450; 18 Johns. R. 559.

2. Prescott was not a competent witness, being interested. He held all the property by a fraudulent conveyance as against creditors, although not so as against the defendant. The facts stated in the bill of exceptions show, that such is the fact.

3. The construction given by the Judge to the words *fraud* and *wilful concealment*, was an erroneous one. It obliterates the word fraud from the statute, making the meaning the same as if this word had not been there. Every clause and word in a statute is to have some force and effect. 22 Pick. 571; 4 Mass. R. 208; 6 Mass. R. 169. Fraud and wilful concealment are distinct things in the bankrupt law, and have been so regarded in the decisions. 5 Law Rep. 187, 213, 256, 292, 399, 459, 460, 461; 6 Law Rep. 264; 7 Law Rep. 130, 289; 2 Howard, 202; 4 Johns. R. 596; 4 Scott's N. R. 165. By the word fraud, in that act, is intended a legal or constructive fraud, as well as where there is an actual design to commit a fraud. 5 Law Rep. 300, 311; 2 Kent, 532; 4 Johns. R. 596; 1 Story's Eq. 261.

4. The articles not in existence, at the time of the sale by the defendant, did not pass by the sale. Chitty on Con. 331; 2 Kent, 468; 8 Pick. 236; 21 Maine R. 86; 6 Law Rep. 347.

5. The instructions of the presiding Judge in relation to the wood were erroneous. And even had they been correct, they were inapplicable to the facts; and on this ground there should be a new trial. 22 Maine R. 113.

6. There should be a new trial because the verdict was against evidence.

*McCobb*, for the defendant, said that as this case came before the Court on exceptions to the ruling of the Court in matters of law, under the provisions of our statute, and not as a report of the case by the Judge, the only inquiry is, whether the rulings and instructions in matters of law were right. 21 Maine R. 14. There is another fatal objection to the positions of the gentleman. If there had been any thing in them, they do not touch this case, as his exceptions do not show whether the note was given before or after the bankrupt law went into operation.

Prescott had no interest in the event of the suit, and was a competent witness. The assignee of a bankrupt represents creditors of the bankrupt, and if the sale was fraudulent, has

the same right to avoid it as other creditors. 17 Mass. R. 222; 20 Pick. 330. This verdict cannot be used for or against the witness, and if there was more probability that other creditors would interfere, than that the assignee would, it would be but a remote and contingent interest, which goes merely to the credit. 17 Maine R. 267; 21 Maine R. 490. But there is no evidence in the exceptions, that there was any fraud, but the reverse.

No other fraud was pretended, than a wilful concealment; and the inquiry is, whether, as applied to that question, the rulings and instructions at the trial were or were not correct. To constitute a wilful concealment, there must be an intentional design, or fraudulent suppression and misstatement. An omission by mistake or accident is not a wilful concealment. Story J. in matter of Tibbets, 5 Law Rep. 268; Betts J. in matter of Banks, 5 Law Rep. 371; Prentiss J. in matter of Pierce, 6 Law Rep. 262; Sprague J. in matter of Wilson, 6 Law Rep. 272. As applied to the facts in the case, the Judge, by remarking that fraud and wilful concealment meant the same thing, merely said, that there could be no wilful concealment without fraud — that an unintentional omission would not be wilful concealment.

There are at least three fatal objections to the motion for a new trial. The motion was not filed within the time allowed by the rules of Court. There is no report of the evidence, as required both by the rules of Court and by the statute; as what appears in the exceptions is but partial, merely sufficient to raise the questions of law, without giving a fair view of the case. And even taking the exceptions as a report of the evidence, the verdict was right.

The opinion of the Court was drawn up by

WHITMAN C. J. — It has been so often held, that the Bankrupt Act, of 1841, is constitutional, and equally affected debts contracted before its passage, as well as those of a subsequent date; and as well in case of voluntary, as of involuntary bankruptcy, that it can scarcely be regarded, at this time,

as otherwise than preposterous to contend for any other construction. Besides, no such question was raised at the trial; and now first occurs in argument.

The first question, then, to be considered is, was the witness Prescott, properly admitted to give testimony. It is clear that he had no direct interest in the event of this suit. The action is against Pierce upon a note of hand given by him to the plaintiff. If judgment were recovered, and execution issued thereon, it cannot be foreseen, that it would be levied on any property to which the witness could or would lay claim. And if it were rendered certain, that such execution would be levied upon property, which would be claimed by him, before he could be excluded, the Court would have to decide, that his claim was fraudulent and void as against creditors; and this too in a suit in which he was not a party, which the Court could never undertake to do; for, if it was not so fraudulent, his title could not be in danger of being affected by its being seized on such execution. The interest, therefore, which the witness had was both remote and contingent; and such as could not have the effect to exclude him from testifying.

The defendant, in his defence, introduced his certificate in bankruptcy. This the plaintiff attempted to impeach, as having been fraudulently obtained; and insisted, that the defendant, at the time he became a bankrupt, had property, which he did not disclose, and insert in his inventory, or schedule of property, rendered in the course of the proceedings in bankruptcy; and that, though the omission was by accident or mistake, it was a fraudulent act, within the meaning of the act, $\S$ 4; the provision of which is, that the certificate shall be a full discharge, " unless the same shall be impeached for some frand, or wilful concealment of his property, or rights of property, as aforesaid, contrary to the provisions of this act." The Court ruled that such construction was inadmissible, and we think correctly. The statute shows, that to avoid a certificate, one of two things must be established, either that there was fraud, or a wilful concealment of prop-

erty. This proposition, in behalf of the plaintiff, necessarily excludes a wilful concealment of property ; for such concealment never can be by accident or mistake. And it will be equally absurd to denominate, what occurs from accident or mistake, a fraud.

It was next insisted that the evidence shew a wilful concealment of property ; and this question was submitted to the jury, under certain instructions from the Court, the correctness of which were supposed to be questionable. It was among other things, remarked, that the word fraud included a wilful concealment of property, and that the wilful concealment of property was a fraud, so that the two terms meant the same thing. The counsel for the plaintiff, in his argument, has seized upon this opinion, thus uttered in reference to the case then before the Court, as if it were intended. to confound every species of fraud, with the wilful concealment of property, although his position, as applicable to his case, had not the slightest connexion with any other species of fraud. The evidence afforded no other pretence of fraud than what arose from a tendency to prove concealment of property.

To prove a wilful concealment of property, the plaintiff had introduced a witness, who testified, that, in March or April, 1842, the defendant had from five to ten cords of wood, hauled out into the road, near the witness' house, and about ten cords more in the witness' field, and ten or fifteen cords more in the woods, on the Kelsea place, from which the residue had been hauled ; and that the defendant hauled the same wood to market in June or July of the same year. In reference to this evidence the Court remarked to the jury, that unless they were satisfied there was a wilful concealment of property on the part of the defendant, the verdict should be in his favor ; that perhaps the proof relative to the wood was susceptible of explanation, " it appearing that the wood was got from the land of another person ; it might be that it was not to be his property till stumpage was paid, or that it was hauled to market upon shares, so that he could not consider himself the owner of it; that to make him guilty of fraud it

should appear, that it was actually his, so that his assignee could be entitled to it."

In thus assuming it as a fact, that the defendant did not own the Kelsea place, the Court is supposed to have erred. But in assuming a matter as a fact, no error, in matter of law, is presented; and it is only as to such errors that exceptions, under the statute, c. 96, can be taken. This assumption, however, if not well founded, should have weight on a motion seasonably filed for a new trial for a verdict against evidence, as the jury might have been misled by it. But on such motion the whole case should be exhibited as it passed before the jury. Many facts, in trials before a jury, pass for such *sub silentio.* Both parties knowing them to be such they suffer them to pass without notice. A bill of exceptions seldom contains a full report of the evidence offered. Enough, however, does appear in the bill of exceptions in this case to render it presumable, that it was well understood, that there was no pretence, that the defendant owned the Kelsea place. The defendant was a bankrupt, and the attempt was to prove concealment of property; yet no evidence was offered, it is manifest, to prove that he owned that place, and had concealed such ownership. The exceptions render it evident, that his schedule of property, rendered in the proceeding in bankruptcy, was used at the trial. If the Kelsea place had been owned by him, it would either have been found in that schedule, or its not being there would have been used against him. The Judge, therefore, could not have been out of the way in assuming it as an undeniable fact, that the defendant did not own that place.

The suggestions made to the jury, as to the inconclusiveness of the evidence concerning the wood, form no ground of exception under the statute. It was for the plaintiff to make out a case of fraud. The burthen was upon him to do it. If the wood was the defendant's it was for the plaintiff to prove it. Hauling it from the land of another person did not render it conclusive that he owned it. Such other person might have been produced to prove it, if such had been the fact; and, if

such had been the fact, it can scarcely be doubted that he would have been called.

*Exceptions and motion for a new trial overruled.*